Jesus **CASTRO** et al., Plaintiffs,

v.

**LYKES LINES AGENCY**, Inc., Defendant.

Julio **ESTRADA** et al., Plaintiffs,

v.

**BULL INSULAR LINE**, Inc., Defendant.

Carlos **APONTE** et al., Plaintiffs,

v.

**ALCOA STEAMSHIP CO.**, Inc., Defendant.

Agustin **RIVERA** et al., Plaintiffs,

v.

**BULL INSULAR LINE**, Inc., Defendant.

Felix **VELEZ** et al., Plaintiffs,

v.

**LYKES LINES AGENCY**, Inc., Defendant.

Civ. Nos. 8906, 8907, 9001, 9183, 9184.

United States District Court
D. Puerto Rico, San Juan Division.
Oct. 10, 1956.

Canales & Segarra, Fernando Fornaris, Jr., Victor M. Bosch, San Juan, P. R., for plaintiffs.

Hartzell, Fernandez & Novas, San Juan, P. R., for defendants.

RUIZ-NAZARIO, District Judge.

These actions, consolidated for trial of the issue of coverage only, are for the recovery of unpaid overtime compensation under Act 379, May 15, 1948 of the Legislature of Puerto Rico. 29 L.P.R.A. Sections 271–299.

All of the plaintiffs, except five, worked as foremen of loading and unloading operations of defendants' ships at the Port of San Juan during the period covered by the complaint. Five worked during said period as head foremen for Bull Insular Line Inc. at different terminals in San Juan.

Defendants contend that plaintiffs under the regulations approved under said Act 379, supra, were executives and as such, exempt from coverage of the Act. A further defense is that the actions are barred by the statute of limitations, Section 1867 of the Civil Code of Puerto Rico, 31 L.P.R.A. Section 5297.

### I.

The regulation respecting executives under the Commonwealth minimum wage legislation defines this status as follows:

"The term 'employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee (1) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and (2) who customarily and regularly directs the work of two or more other employees therein; and (3) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (4) who customarily and regularly exercises discretionary powers; and (5) who does not devote more than 20 per cent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (1) through (4) of this section; Provided That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment or who owns at least a 20 percent interest in the enterprise in which he is employed; and (6) who receives for his services a fixed compensation (by the day, week, fortnight or longer periods) equivalent to a weekly salary of not less than $30.00".

It is apparent that, save for the final paragraph, the Commonwealth definition is but a copy of the Regulation respecting bona fide executives issued under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, Appendix, § 541.2. This being the case, it becomes necesary to consider the case at bar in the light of Cintron Rivera v. Bull Insular Line, 1 Cir., 164 F.2d 88, in which the decision of this court, holding that gang foremen in charge of stevedores were exempt from coverage of the FLSA as bona fide executives, was affirmed.[1]

Except for one requirement, the evidence in the case at bar shows compliance with the FLSA regulation more strongly than that before the Court in Cintron Rivera v. Bull Insular Line, supra. The preponderance of the evidence shows that the hatch of a ship is a customarily recognized department or subdivision of

---

[1] Twelve of the plaintiffs in No. 8907 were plaintiffs in the Cintron Rivera case.

these enterprises; that these plaintiffs customarily and regularly directed the work of more than two employees therein; that they hired and fired, and particular weight was given to their suggestions with respect to the appointment of substitute or assistant foremen; that they exercised certain discretionary powers; and that they did not devote more than 20% of their hours to activities not closely related to the work performed in their supervisory capacity, described above. If this were all, I would be bound by the Cintron Rivera case. However, at the time of the Cintron Rivera case, foremen were paid on a salary basis, as required by subparagraph (f) of the Federal regulation. During the period covered by the present complaints, the foremen were paid on a shift basis. This distinguishes the case at bar from Cintron Rivera, and would defeat exemption under the FLSA.

█ Under the Commonwealth regulation, to qualify as a bona fide executive, the employee must, in addition to the requirements found above as having been filled, according to the evidence adduced, must receive for his services a fixed compensation (by the day, week, fortnight or longer periods) equivalent to a weekly salary of not less than $30.

Defendants contend that under this language it is not necessary to show a salary basis to qualify an employee as an executive. Perhaps this is correct—, however, it is necessary that the employee receive a fixed compensation. This these plaintiffs did not receive. For example, in 1951 all defendants (except Alcoa which began operating September 1952) compensated these plaintiffs as follows:

| | | Wages | |
| | | Regular Days | Holidays |
| From | To | | |
| 7 AM | 12 N | $7.25 | $8.75 per shift |
| 1 PM | 6 PM | 7.25 | 8.75 per shift |
| 7 PM | 11 PM | 8.75 | 8.75 " " |
| 12 MN | 1 AM | | |
| 1 AM | 6 AM | 8.75 | 8.75 per shift |

█ I do not believe that I would be justified in holding that a compensation that changes according to the part of the 24 hours worked, and according to whether the work is performed on a regular day or holiday, is a *fixed* compensation. I believe that the meaning of this regulation is that the employee must receive a guaranteed minimum of $30 weekly, whether the actual computation be made on the basis of the day, week, fortnight or longer. Indeed, the compensation of these men was not fixed on even a daily basis—their pay varied according to the hours worked, and according to *what* period of the day they worked those hours, and what day they worked. Nothing could be more variable than their compensation. I must therefore hold that plaintiffs are not bona fide executives.

With respect to Civil No. 9001, Civil 8906 and Civil 8907, the plaintiffs claim under the Fair Labor Standards Act as well as the provisions of Section 29 L.P. R.A. §§ 271–299. As there is no contention that they were paid on a salary basis, they were obviously not exempt as bona fide executives under the Federal Act.

### II.

█ All plaintiffs herein were covered by collective bargaining agreements which expired on December 31, 1949. From January 1, 1950 to March 1955, they entered into individual contracts of employment with the defendants herein. As the Supreme Court of Puerto Rico held, in the Chabran v. Bull Line Inc., 69 P.R.R. 250 that the three years limitation provided in Sec. 1867 of the Civil Code commences to run upon the expiration of the collective bargaining agreement and the making of a new arrangement, I must hold that all claims for wages for work performed prior to January 1, 1950 are barred by the limitation of such actions provided in Section 1867, 31 L.P.R.A., Section 5297.

An auditor will be appointed to determine the exact amounts due plaintiffs under this opinion.