226

FRANK ZORRILLA, ETC., ET AL., querellantes y recurrentes, *v.*
FAJARDO EASTERN SUGAR y/o C. BREWER PUERTO RICO,
INC., querellada y recurrida.

*Número:* R-67-234     *Resuelto:* 29 de abril de 1969

*Nicolás Nogueras, Jr.,* abogado de los recurrentes; *McConnell, Valdés, Kelley & Sifre* y *Baltazar Corrada,* abogados de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 30 de agosto de 1963, ocho trabajadores de la Fajardo Eastern Sugar interpusieron querella en reclamación de salarios por razón de horas extras trabajadas. La reclamación ascendía a $30,888.09 y a $61,776.68 con la penalidad doble.

En 20 de febrero de 1964 la querellada contestó y negó adeudar cantidad alguna a los querellantes. Alegó ciertas defensas especiales relativas a la prescripción.

En 24 de junio de 1964 la querellada aceptó que era procedente que a los querellantes les fueran reliquidados sus haberes y se les compensara la diferencia en su salario, y que la única diferencia entre las partes era la manera de hacerse los cómputos.

En 20 de octubre de 1966 las partes suscribieron y sometieron una estipulación que sirvió de base para la decisión del caso por la Sala sentenciadora. Dicha estipulación, en la parte pertinente, dispone así:

"1.—Que las partes consideran que el caso de epígrafe puede ser sometido a la consideración del Hon. Tribunal mediante una estipulación de hechos y a tales efectos estipulan como sigue:

(a)—Que según los cómputos preparados por el Departamento del Trabajo la querellada le estaría adeudando a los querellantes las sumas que se indican a continuación sin incluir la liquidación de daños y perjuicios o penalidad que señala la ley: Pedro Nieves, $2,144.97; Percy Foret, $3,703.67; Práxedes Corcino, $956.20; Hermenegildo Molina, $1,136.00; Cruz Cruz Otero, $2,443.85; Jesús E. Ayala, $2,063.73; José Hernández, $3,728.82

y Pedro Soto, $962.98, para un total agregado de $17,140.22 más una suma igual por concepto de penalidad.

(b)—Que según los cómputos preparados por la querellada ésta adeudaría a los querellantes las cantidades que se indican a continuación: Pedro Nieves, $24.23; Percy Foret, $22.44; Práxedes Corcino, $18.45; Hermenegildo Molina, $15.90; Cruz Cruz Otero, $21.54; Jesús E. Ayala, $21.54; José Hernández, $22.44 y Pedro Soto, $21.54, para un total agregado de $168.08 más una suma igual por concepto de penalidad.

(c)—Que la controversia fundamental entre las partes gira en torno a la fórmula utilizada para determinar el tipo por hora a ser utilizado como base para compensar las horas regulares y las horas extras de trabajo.

(d)—A los fines de poner al Tribunal en condiciones de resolver la principal controversia en esta caso en cuanto a la fórmula a seguirse para determinar el tipo por hora regular que debe servir de base para compensar las horas extras de trabajo pasamos a transcribir una cláusula de trabajo típica extractada del contrato otorgado entre los querellantes y la querellada para la zafra del año 1954:

'COMPENSACIÓN A PAGARSE:—La Fajardo Sugar Company compensará los servicios de los señores Carmelo Quiñones y Julio Santiago González con la suma de DOS MIL CINCUENTA DÓLARES ($2,050.00) cada uno por la duración de la zafra 1953–54 desde su comienzo hasta no más tarde de una semana después de la terminación de la molienda, entendiéndose que esta cantidad no cubrirá un período mayor de seis meses. Esta cantidad les será pagada en sextas partes correspondiendo a cada uno de estos señores a fin de cada mes la suma de TRESCIENTOS CUARENTA Y UN DÓLARES CON SESENTA Y SEIS CENTAVOS ($341.66). La diferencia hasta cubrir el total de $2,050.00, les será pagada cuando se dé por cumplido o consumado este contrato.—2.—La Fajardo Sugar Company compensará los servicios de los señores Pedro Soto, Pedro Nieves Figueroa, Cruz Cruz y Erineo Ayala con la suma de MIL NOVECIENTOS DÓLARES ($1,900.00) cada uno por la duración de la zafra 1953–54 desde su comienzo hasta no más tarde de una semana después de la terminación de la molienda; entendiéndose, que esta cantidad no cubrirá un período mayor de seis meses. Esta cantidad les será pagada en sextas partes correspondiendo a cada uno de estos señores a fin de

cada mes la suma de TRESCIENTOS DIECISÉIS DÓLARES CON SESENTA Y SEIS CENTAVOS ($316.66). La diferencia hasta cubrir el total de $1,900.00 les será pagada cuando se dé por cumplido o consumado este contrato.'

(e)—La fórmula utilizada por el Departamento del Trabajo para determinar el tipo regular por hora a los fines de computar las horas extras consistió en dividir el importe total de la suma garantizada para cada una de las zafras por el número de horas regulares efectivamente trabajadas. Por ejemplo, si en el período de 6 meses, que comprende 26 semanas de trabajo, el querellante trabajó todas las horas regulares comprendidas en cada semana el sueldo total establecido en el contrato para los 6 meses se divide entre las horas regulares trabajadas para determinar el tipo por hora; si en lugar de trabajar todas las horas regulares comprendidas en dichas 26 semanas el querellante trabajó únicamente la mitad de las horas regulares comprendidas en dichas 26 semanas o cualquier otra proporción menor a la totalidad de horas regulares comprendidas en dichas 26 semanas, se divide bajo la fórmula seguida por el Departamento del Trabajo el sueldo total para los 6 meses entre el número de horas regulares realmente trabajadas.

(f)—La fórmula seguida por la querellada para determinar el tipo regular por hora a los fines de computar las horas extras de trabajo fue la de dividir el salario total correspondiente a los 6 meses de zafra entre 1,040 que corresponde a 26 semanas de zafra de 40 horas cada una, compensando entonces cada hora regular trabajada sobre la base del tipo regular resultante y compensando las horas extras a razón de tipo doble.

(g)—Las partes estipulan que la querellada compensó las horas extras a los querellantes por encima y en adición al sueldo total establecido para los seis meses de trabajo por cubrir dicho sueldo únicamente las horas regulares de trabajo, y la controversia gira sobre la fórmula que deba utilizarse para determinar el tipo regular a servir de base para compensar las horas extras a tipo doble y las horas entre cuarenta y cuarenta y ocho a la semana a tiempo sencillo.

. . . . . . . .

(i)—Las partes estipulan que las reclamaciones de los querellantes para las zafras de 1952 y 1953 están prescritas a tenor con la Ley Núm. 96 de 26 de junio de 1956."

En 8 de junio de 1967 la Sala sentenciadora dictó sentencia usando como base la estipulación antes referida. Se expresó así la Sala:

"La controversia en el caso consiste en determinar el tipo regular por hora a los fines de compensar las horas trabajadas por los reclamantes en exceso de las 8 diarias y el séptimo día. Sobre este punto no existe disparidad de criterio entre las partes.

El Secretario del Trabajo de Puerto Rico estima que la determinación del tipo regular por hora debe hacerse tomando en cuenta el número de horas regulares realmente trabajadas por los querellantes durante cada una de las zafras y dividiendo el sueldo garantizado por dichas horas para así obtener el tipo regular.

La fórmula adoptada por la querellada para determinar el tipo regular por hora a los fines de computar el salario correspondiente a las horas extras de trabajo fue la de dividir el salario total correspondiente a los seis meses de zafra entre 1,040 que corresponde a 26 semanas de zafra de 40 horas cada una, compensando entonces cada hora regular trabajada sobre las 6 del tipo regular restante y compensando las horas extras a razón de tipo doble.

.    .    .    .    .    .    .    .

La querellada, movida aparentemente por el deseo o necesidad de contar con el número de azucareros requeridos para el funcionamiento normal de su factoría durante los distintos períodos de zafra a que se refiere la querella optó por formalizar con ellos un contrato a virtud del cual les aseguraba un ingreso fijo por el término de 6 meses que se prolongaba la zafra. A los fines de la controversia que se plantea carece de mayor importancia la diferencia en el salario de los integrantes de uno y otro grupo de querellantes.

Es preciso recurrir, de inmediato, a la disposición legal que sirve de base a los querellantes para sostener que les asiste la razón en su reclamación."

Interpretando el Art. 5 de la Ley Núm. 379 de 15 de mayo de 1948 que estimó aplicable, concluyó la Sala:

"La última oración del Artículo 5 de la Ley Núm. 379 parece darle la razón a los querellantes en su interpretación

sobre la forma de determinar el tipo de salario que servirá como base para fijar y a su vez para computar el salario por horas extras trabajadas.

A nuestro juicio el salario diario, semanal, mensual o de otra forma estipulada se determina, no por el número de horas regulares real y efectivamente trabajadas por el empleado sino por el número de horas regulares que se trabajó durante ese mismo período de acuerdo con las disposiciones de la ley. Nos parece que esta es la interpretación más razonable y justiciera a tenor de los términos del contrato de trabajo acordado por las partes y de una interpretación razonable de las disposiciones contenidas en el Artículo 5 de la Ley Núm. 379 aplicable a la jornada de trabajo. De ahí que la propia Ley Núm. 379 dispone que si un empleado trabaja por un salario semanal o mensual dicho salario cubrirá únicamente el pago de las horas regulares de trabajo de cada semana o cada mes.

Quizás nos estemos apartando un tanto de lo que parece ser a primera vista la letra de la ley para llegar a la solución más justiciera y justa de la cuestión que se plantea. En este sentido convenimos con la querellada en que constituiría un absurdo la fórmula propuesta por la parte querellante al sostener que si un obrero trabaja, bajo un contrato de trabajo como en el caso de autos, más de las 8 horas regulares tendría derecho a una compensación a un tipo más alto por las horas extras que si trabajara la jornada regular completa. Ésta evidentemente no pudo ser la intención legislativa. Rodríguez vs. Bosch 32 D.P.R. 602; Solá vs. Orcasitas 11 D.P.R. 81.

Por lo expuesto adoptamos la fórmula de la querellada para computar el tipo de salario regular como base para determinar el importe de las horas extras trabajadas por cada uno de los querellantes y en su consecuencia resolver, como resolvemos, que la querellada adeuda a los querellantes por concepto de salarios las siguientes sumas:

| | |
|---|---|
| Pedro Nieves | $24.23 |
| Percy Foret | 22.44 |
| Práxedes Corcino | 18.45 |
| Hermenegildo Molina | 15.90 |
| Cruz Cruz Otero | 21.54 |
| Jesús E. Ayala | 21.54 |

José  Hernández                                    22.44
Pedro  Soto                                        21.54

Para un total de $168.08 más una suma igual a cada querellante por concepto de penalidad de ley."

Es aplicable en este caso el Art. 5 de la Ley Núm. 379 de 1948 que dispone lo siguiente:

"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; *Disponiéndose,* sin embargo, que todo patrono de una industria de Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo (Fair Labor Standards Act), aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora de trabajo en exceso de la jornada legal de ocho (8) horas o en exceso de cuarenta (40) horas a la semana un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado o fijare otra norma de trabajo o de compensación, o de ambas. *Para determinar el tipo de salario convenido para horas regulares de trabajo, se dividirá el salario diario, semanal, mensual o en otra forma estipulado, por el número de horas regulares que se trabaje durante ese mismo período de acuerdo con las disposiciones de esta Ley.*" (Énfasis nuestro.)

A tenor de la disposición del Art. 5 que hemos enfatizado, sostiene la querellada-recurrida que a los efectos de calcular el salario de las horas regulares, debe usarse como divisor la cifra de 1,040, por ser éstas las horas regulares de trabajo comprendidas en el período de 26 semanas. Véase Estipulación, 1-(f). En otras palabras, tomando como ejemplo la compensación convenida para la zafra del año 1953–54 de $2,050, esta cantidad debe dividirse por 1,040 para obtener el salario de una hora regular que, conforme al Art. 5, sirve de base para calcular las horas extras. Los querellantes-

recurrentes sostienen que para determinar ese salario de hora regular, debe dividirse $2,050 por aquel número de horas regulares comprendidas en la zafra.

El problema sobre la manera de computar el salario de una hora regular que se nos presenta en este recurso no ha sido considerado por nosotros. Nuestras decisiones que envuelven controversias sobre el cómputo del salario regular por hora, Cf. *Olazagasti* v. *Eastern Sugar Associates*, 79 D.P.R. 93 (1956); *Berríos* v. *Eastern Sugar Associates*, 79 D.P.R. 688 (1956); *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478 (1959), no resuelven la controversia ahora ante nos. Tampoco se presenta en este caso la situación que consideramos en el más reciente de *Maldonado* v. *Eastern Sugar Assoc.*, 93 D.P.R. 362 (1966), en que habiéndose convenido una zafra fija de 23 semanas, y un divisor para las horas extras de 1,104 horas (23 x 48), la Sala de instancia resolvió a base de un divisor de 920 horas (23 x 40) bajo el supuesto de derecho erróneo de que la semana regular era de 40 y no de 48 horas, y anuló por ese fundamento esa parte del convenio.

Sostiene la querellada-recurrida que aceptar la fórmula del Secretario del Trabajo que representa a los querellantes sería darle una interpretación a la ley que conduciría a un absurdo. Nos da varios ejemplos la querellada que realmente conducirían a un absurdo, tales como el de que si en la zafra un obrero hubiera trabajado una sola hora, el tipo por hora hubiera sido de $2,050 regular, y de $4,100 para la hora extra. Estos ejemplos, que como afirma la recurrida llevarían a un absurdo, aparentemente impresionaron a la Sala sentenciadora.

■ La posición que asumen los obreros querellantes no es como la interpreta la querellada. Cuando el Art. 5 de la Ley Núm. 379 dice que "[p]ara determinar el tipo de salario convenido para horas regulares de trabajo se dividirá el salario diario semanal, mensual *o en otra forma estipulado*, por el

número de horas regulares *que se trabaje* durante ese mismo período de acuerdo con las disposiciones de esta Ley", la frase "horas regulares que se trabaje" significa las horas regulares susceptibles o sujetas a ser trabajadas durante el período, y no las que un determinado obrero, por razones personales, u otras razones, de hecho hubiera trabajado durante el período. En otras palabras, la frase "horas regulares *que se trabaje*" debe leerse como horas regulares sujetas a ser trabajadas, en un período de compensación determinado. Esta interpretación de la Ley no da lugar a que surjan esas situaciones absurdas en el cómputo del salario por hora regular, que presenta la recurrida.

■ Se trata en este caso de empleados que eran azucareros. Por las razones que expone la Sala sentenciadora en sus conclusiones, para estos trabajadores se hizo un contrato de trabajo específico. Dicho contrato de trabajo es la ley que rige las obligaciones mutuas de las partes. De acuerdo con el contrato según transcrito, la Fajardo Sugar se obligó a compensar a estos querellantes por la zafra de 1953–54 en la cantidad de $2,050 a cada uno *por la duración de la zafra* y hasta una semana después de terminada la molienda, pero en conjunto dicho período no debía exceder de seis meses. La cláusula que sigue en el contrato sobre la manera de pagar el monto de $2,050 repartido en pagos parciales cada mes establece sólo la forma de efectuar la compensación, pero no establece la compensación.

■ En cualquier año, de todos los que están envueltos en esta reclamación, en que desde el comienzo de la zafra y hasta una semana después de la terminación de la molienda se llegare a 26 semanas, están en lo correcto la recurrida y la Sala sentenciadora en que el divisor a usarse para determinar la compensación por hora regular debe ser la cifra de 1,040, número de horas regulares en 26 semanas según la estipulación sometida.

En aquellos casos en que duración de la zafra desde su comienzo y hasta una semana después de la terminación de la molienda no cubriere 26 semanas, el divisor debe ser aquella cifra que represente el número de horas regulares sujetas a ser trabajadas durante *la duración de esa zafra en particular desde su comienzo hasta no más tarde de una semana después de la terminación de la molienda.*

Al hacer el contrato de trabajo, la querellada no podía ignorar el hecho que hay zafras que duran más y hay zafras que duran menos. Al convenir compensar a estos obreros $2,050 "por la duración de la zafra" ésta era la compensación pactada, ya la zafra durare más o ya la zafra durare menos. Por supuesto, que cualquiera que fuera la fluctuación de año en año, nunca podría ocurrir que una zafra durare una hora, situación obviamente absurda que por vía de ilustración nos da la recurrida.

Por vía de comentario, en la interpretación administrativa de la legislación de salarios federal, se ha adoptado un criterio conforme a la anterior conclusión. Cf. *Bay Ridge Co.* v. *Aaron,* 334 U.S. 446, pág. 464. Como se observa en ese caso, es el *contrato de trabajo* en este caso lo que rige el tipo de salario regular por hora.

*Conforme a lo anteriormente expuesto, se dejará sin efecto la sentencia dictada por la Sala de Humacao del Tribunal Superior en 8 de junio de 1967, y se le devolverá el caso para que compute el salario de hora regular a los efectos de las horas extras de la siguiente manera:*

*(1) En aquellos años en que la zafra se extendió 26 semanas, dividiendo $2,050 por un divisor de 1040, según estipulado.*

*(2) En aquellos otros años envueltos en que la zafra se extendió por un período menor de 26 semanas, dividiendo $2,050, ó la cantidad pactada como compensación en esa zafra, por aquella cifra que resulte ser el número de horas*

*regulares de trabajo comprendidas en el período de esa zafra en particular desde su comienzo y hasta una semana después de terminada la molienda, según reza el contrato de trabajo.*

    *Se dictará sentencia de conformidad.*